IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JIMMIE L. GULLY and )
GLORIA KELLY, )
 )
        Plaintiffs, )
 )
    vs. )   No. 04 C 6821
 )   and 04 C 8080
VAN RU CREDIT CORPORATION, )
 )
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jimmie Gully and Gloria Kelly brought this class action against defendant Van Ru Credit Corporation, alleging that it violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§1692-1692(o), by making false, deceptive or misleading statements in written offers to settle their debts. Defendant now moves for judgment on the pleadings under FED. R. CIV. P. 12(c). For the following reasons, that motion is granted.

## DISCUSSION

A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Guise v. BWM Mortg., LLC, 377 F.3d 795, 798 (7th Cir. 2004); Northern Ind. Gun & Outdoor Shows v. City of S. Bend, 163 F.3d 449, 452 (7th Cir. 1998); Lanigan v. Village of East Hazel Crest, 110 F.3d 467, 470 n.2 (7th Cir. 1997). Plaintiffs' factual allegations are accepted as true and all reasonable inferences are drawn in their favor. Hentosh v. Herman M. Finch Univ., 167 F.3d 1170, 1173 (7th Cir. 1999); GATX Leasing Corp. v. National Union Fire Ins. Co., 64 F.3d 1112, 1114 (7th Cir. 1995). A Rule 12(c) motion is granted "only when it appears beyond a doubt that

the plaintiff[s] cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." Brunt v. Service Employees Intern. Union, 284 F.3d 715, 718-19 (7th Cir. 2002).

"The FDCPA is designed to protect against abusive debt collection practices which would likely disrupt a debtor's life." Pettit v. Retrieval Masters Creditors Bureau, Inc., 211 F.3d 1057, 1059 (7th Cir. 2000). Section 1692(e) of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Plaintiffs focus on section 1692(e)(10), which states that a collection agency may not use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

When determining whether the language of a collection letter violates the FDCPA, the court applies the unsophisticated debtor standard. Fields v. Wilber Law Firm, P.C., 383 F.3d 562, 564 (7th Cir. 2004). That standard "assumes that the debtor is 'uninformed, naive, or trusting,' and that statements are not confusing or misleading unless a significant fraction of the population would be similarly misled." Veach v. Sheeks, 316 F.3d 690, 693 (7th Cir. 2003) (quoting Pettit, 211 F.3d at 1060). The unsophisticated debtor standard benefits the debtor who alleges a violation of the FDCPA, but the standard "admits an objective element of reasonableness" (Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994)), and under that standard courts "disregard unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters." Durkin v. Equifax Check Servs., 406 F.3d 410, 414 (7th Cir. 2005); Taylor v. Cavalry Inv., L.L.C., 365 F.3d 572, 574-75 (7th Cir. 2004) (a court should reject a debtor's interpretation of a letter if it appears to be a "fantastic conjecture" that a "significant fraction of the population" would not find misleading).

In the collection letters it sent to plaintiffs, defendant offered to settle plaintiffs' outstanding debts for a percentage of the actual amount owed. Specifically, the letter sent to Gully stated in relevant part:

> We are authorized to settle your account with the above client which, as of the date of this letter, is $796.87 for the sum of $318.75, provided this sum is received by [defendant] by November 11, 2003.
>
> The offer automatically will be revoked if your payment is not received by November 11, 2003.

The letter to Kelly is identical in all respects except for the amount owed and the offer's closing date. In both letters defendant offered to settle for 40 per cent of the total outstanding debt. Plaintiffs claim that this language violates section 1692(e) because it "convey[s] the false impression that the offer is only available for a brief period" (plf. cplt. ¶ 12). Plaintiffs allege that defendant was not limited to settle for 40 per cent and could also settle after the offer's stated revocation date. Defendant argues that the contents of the letters are literally true because it was actually authorized to settle for 40 per cent of the debt. Defendant also stresses that a finding for plaintiffs would harm consumers because it would deter collection agencies from making settlement offers to debtors.

On a preliminary note, defendant misstates the issues at stake in this case, and several of its arguments thus rest on a mistaken predicate. This case is not about whether debt collectors may send settlement offers to debtors. Rather, the case involves how collectors may send settlement offers, and, as a corollary, the effect the collection letters have on their recipients. Thus, while the focus rests on how debt collectors choose to phrase their dunning letters, we must note that plaintiffs' argument may unduly restrict a collector's ability and limit its incentives to make settlement offers.

Plaintiffs argue that a debt collector violates the FDCPA by making a settlement offer that remains open to a certain date, if the collector is actually authorized to settle for a lesser amount and after the stated deadline. Assuming that such settlement offers are false and misleading, debt collectors seeking to craft nonviolative settlement offers may be required to disclose the extent of their settlement authority, which is unfair and unrealistic. No debt collector would send a dunning letter that states: "We are authorized to settle your outstanding debt for 60 per cent of the total amount due. This offer is open until August 31, 2005, at which time it will be revoked. But our settlement authority also allows us to settle with you after that date, and even at lesser amounts." That is tantamount to telling the debtor, "if you wait around, you may get a better deal." No debtor would ever respond to the initial offer with a better deal on the horizon. A debt collector should be able to make settlement offers because they are advantageous to debtors who desire to erase their outstanding debts at discounted rates, and also to debt collectors who seek to collect debts without resorting to litigation. Prohibiting debt collectors from extending settlement offers would be contrary to the purpose of the FDCPA. *See* Lewis v. ACB Bus. Servs., 135 F.3d 389, 399 (6th Cir. 1998). Yet, despite the benefits of settlement offers, courts that have considered challenges to their legality have typically told debt collectors what not to do, but not what they can do, and as a result there is no clear formula that debt collectors can adopt. The following cases illustrate that present situation.

In Pleasant v. Risk Management Alternatives, Inc., 2003 U.S. Dist. LEXIS 890, 2003 WL 164227 (N.D. Ill. 2003), the plaintiff received a letter that offered a "one time settlement" and also stated that "[i]f settlement amount is not received by the date indicated above, the offer will be null and void and the entire balance outstanding will be due." The court found

defendant's motion to dismiss, the court also concluded that the stated deadlines were not actual deadlines. *Id.* In <u>Jackson v. Midland Credit Corp.</u>, No. 04 C 5056 (N.D. Ill. Oct. 12, 2004) (Docket No. 8), the plaintiff received three letters, each offering an opportunity to settle for 50 per cent of the total outstanding debt. The court denied the defendant's motion to dismiss and concluded that "an unsophisticated consumer debtor could read the letters and conclude that the [debt collector] was making a one-time-only offer and was unwilling to settle the debt at a later date." *Id.* at 1. According to the court, the letters were false and misleading because the debtor never intended to make a one-time offer, as evidenced by the sending of the second and third letters. In <u>Gully v. Arrow Fin. Servs., LLC</u>, No. 04 C 6849 (N.D. Ill. June 8, 2005) (Docket No. 42), the plaintiff[1] received a single collection letter that stated:

> At this time our client is willing to settle your past due account for 75% of the full balance and accept this amount as settlement of the referenced account. The settlement amount must be made in one payment and received by our office on or before June 7, 2004 ... Should you have any questions please feel free to contact me at 800-807-3490 ext. 2467.

*Id.* at 2. The plaintiff alleged that the language "at this time" suggested that the defendant would not offer a future settlement offer or accept payment after the stated deadline, when it would in actuality accept payment after the deadline. After surveying the case law, the court concluded that this allegation was sufficient to survive the defendant's Rule 12(c) motion. The court also noted that it made no difference that the plaintiff received only one letter, unlike the plaintiff in <u>Jackson v. National</u>, *supra* and <u>Jackson v. Midland</u>, *supra*. In <u>Miller v. Ocwen Federal Bank FSB</u>, No. 05 C 0308 (June 15, 2005) (Docket No. 31), the plaintiff received a letter that stated he had the "opportunity to settle your account balance at a discounted rate of $1157.17. If you act NOW. Satisfactory arrangements must be in place no later that [sic]

---

[1] The named plaintiff in the case before Judge Pallmeyer is the same plaintiff before this court.

December 19, 2004 if you choose to take advantage of this special offer." *Id.* at 1. The very next day the plaintiff received another dunning letter that made a similar offer. The court concluded that the first letter conveyed "a sense of urgency and finality," and an unsophisticated debtor "could think it was a one-time-only offer." *Id.* at 2.

Thus, the trend in this district is to allow a plaintiff's claim to proceed if he alleges that a debt collector's settlement offer presents a one-time offer, but this is not necessarily the case in other jurisdictions. In <u>King v. Arrow Financial Services, LLC</u>, 2003 U.S. Dist. LEXIS 13259, 2003 WL 21780973 (E.D. Pa. 2003), the plaintiff received a dunning letter that stated:

> At this time our client is willing to settle your past due account for 40 % of the full balance and accept this amount as settlement of the referenced account. The settlement amount must be made in one payment and received by our office on or before April 3 2002 [*sic*].

<u>King</u>, 2003 U.S. Dist. LEXIS 13259, *3. The plaintiff alleged that the letter was deceptive because the defendant was willing to accept a settlement payment after the stated deadline. The court granted the defendant's Rule 12(c) motion and observed that the letter did not state it was a one-time or final offer, and instead found that it "sets forth the terms of the settlement offer in a straightforward fashion." *Id.* at 10. According to the court, the deadline was merely a term of the settlement offer. *Id.* at 10-11. In <u>Kahen-Kashani v. Nat'l Action Fin. Servs., Inc.</u>, 2004 U.S. Dist. LEXIS 27836, *3, 2004 WL 2126707 (W.D.N.Y. 2004), the defendant sent the plaintiff a collection letter that stated that "in order to take advantage of this offer, your payment must be received . . . on or before the date listed below . . ." and also informed the debtor that it may be possible to extend the deadline. The court concluded that this language was not tantamount to a one-time offer and therefore did not violate the FDCPA. *Id.* In <u>Sarder v. Acad. Collection Serv., Inc.</u>, 2005 U.S. Dist. LEXIS 11934, 2005 WL 615831

(E.D.N.Y. 2005), the plaintiff received a dunning letter that included a settlement offer that was valid until a specific date. The letter gave the plaintiff two options: either send payment or respond that "I cannot settle now, but call me at the below listed number to discuss my account." The court found the letter did not violate the FDCPA because it contained no indication that the debt collector would not settle after the stated deadline for a lesser amount. *Id.* at *7-8. Equally important to the court was the invitation to discuss the account, which created a "potential for negotiation of both the price and the date." *Id.* at *8. In Kalinina v. Midland Credit Mgmt., Inc., 2004 U.S. Dist. LEXIS 27510, *3, 2004 WL 3187150 (N.D. Cal. 2004), the court found no FDCPA violation when the debt collector wrote that it "is currently able" to offer a 50 per cent discount if payment is made by certain dates.

The dispute over the language of a settlement offer reached the appellate level in Goswami v. American Collection Enterprise, Inc., 377 F.3d 488 (5th Cir. 2004). In Goswami the court concluded that a settlement letter stating that "only during the next thirty days will our client agree to settle your outstanding balance due with a thirty percent discount off your balance" was false and violated the FDCPA because the debt collector could offer the thirty per cent discount after the stated deadline. *Id.* at 495. According to the court, the statement in the letter was untrue and portrayed the debt collector's offer as a "one-time, take-it-or-leave-it offer that would expire in thirty days." *Id.* The court offered no guidance as to how to word a nonviolative settlement offer.

The above survey illustrates the choppy waters that a debt collector must navigate when it attempts to draft a settlement offer. It cannot portray the offer as a one-time-only offer, nor is it proper to include any language that an unsophisticated debtor could interpret as a one-time-only offer, such as, possibly, "at this time" (under Gully v. Arrow, but not King). A debt

collector may or may not extinguish an implication of finality if it provides the debtor with an opportunity to discuss his account. A debt collector that sends one letter faces the same risk of liability as one that sends three. These uncertainties, taken together with the potential harms produced by requiring a debt collector to disclose the extent of its settlement authority, suggest that this issue would benefit from a safe harbor formula, akin to those provided by the Seventh Circuit to address other issues arising under the FDCPA.[2] With these observations in mind, we turn to the parties' arguments.

Defendant argues that its letters are literally correct and therefore do not violate the FDCPA. However, the FDCPA "recognizes that literal truth may convey a misleading impression." Gammon, 27 F.3d at 1258 (Easterbrook, J., concurring). Plaintiffs allege that defendant was authorized to settle at a 40 per cent discount at any time, not just within that two-week period, and they also claim that defendant was willing to settle at an increased discount (plf cmplt. ¶ 22). Thus, plaintiffs' argument does not focus on the face of the dunning letters, but on agreements between defendant and the creditor. Plaintiffs do not claim that defendant misstated the amount of money they were obligated to pay – that sum is communicated clearly in the letters. See Fields, 383 F.3d at 565. Instead, plaintiffs argue that the letters were false and misleading because defendant chose not to settle for the amount and within the time period allowed by the creditor. In other words, the letters are clear on their faces, but not in light of defendant's settlement authority.

The fact that defendant did not disclose the full extent of its settlement authority does not, however, render the dunning letters false and misleading. There is a substantial

---

[2] See Bartlett v. Heibl, 128 F.3d 497, 501-02 (7th Cir. 1997); Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C., 214 F.3d 872, 876 (7th Cir. 2000).

difference between not disclosing the extent of one's settlement authority and misrepresenting that authority. Lawyers recognize that a settlement offer is generally an invitation to negotiate – with blatant misrepresentations of their authority, an often used and accepted tool of that negotiation. But plaintiffs in these cases are presumably not lawyers; they are unsophisticated debtors. In those circumstances, while it is in the interests of both debtors and creditors that creditors are able to make settlement offers, we do not believe the statute permits the debt collector to lie. We conclude that a settlement offer that states the proposed discount and the length of the offer, but does not expressly nor implicitly indicate that no other offer will be made, passes muster even though future more favorable terms are likely.

Defendant argues that the letters are not misleading because they do not state that the 40 per cent discount was a one-time offer. A letter need not include the words "one-time offer" in order to give an unsophisticated debtor the impression that he will not have another opportunity to make a payment. By stating that the creditor would only agree to payment within 30 days, when the creditor would have accepted payment after 30 days, the debt collector in <u>Goswami</u> communicated a one-time-only offer, and also misrepresented both its settlement authority and the creditor's intent. Plaintiffs attempt to analogize <u>Goswami</u>, but they fall short. Defendant did not falsely portray what the creditor would accept; instead, it communicated the amount it was willing to accept within a specific time period. And in stating the amount that it would accept, defendant never asserted or implied that this was the plaintiffs' only opportunity to settle. Significantly, defendant did not state that it was authorized to settle "only" for 40 per cent until the specific dates mentioned, which would have injected an artificial sense of finality into the offer. The word "authorized" is benign – it communicated to the debtor that defendant actually worked on the creditor's behalf, and did

not falsely suggest that the 40 per cent discount rate represented either the ceiling or the floor of defendant's settlement authority.

Defendant has the discretion to negotiate within the parameters of its settlement authority, provided that it does not untruthfully state or suggest that the offer was of the one-time-only, take-it-or-leave-it variety. The stated deadline and settlement amounts are not, as plaintiffs contend, "fictitious and meaningless" simply because defendant could settle for less and at a later date. On this point we disagree with the Jackson v. National and Gully v. Arrow courts, which concluded that the stated deadlines were not actual deadlines. A deadline is not meaningless simply because a debt collector makes a settlement offer at the same discounted rate contained in the offer preceding the deadline. That deadline still marked the end of the first offer. Plaintiffs further argue that the deadline cajoles debtors into making payments when the debt collector is able to accept less. The problem with that position is that debt collectors are not obligated to make these settlement offers, and debtors are not entitled to receive them. The FDCPA is not violated when a debtor does not settle his outstanding debt for the least amount of money.

Despite plaintiffs' representations to the contrary, under their argument a settlement offer would be false and misleading unless it was the best possible offer – the greatest discount offer left open for the longest period of time. Otherwise, any offer on the table would not conform to what the debt collector was actually authorized to extend. But, as discussed above, such a result is contrary to the FDCPA's policy of encouraging the settlements of outstanding debts. The settlement offers in defendant's collection letters are neither false nor misleading, regardless of any factual evidence that plaintiffs intend to present – they do not extend one-time-only offers and they do not violate section 1692(e) of the FDCPA.

## CONCLUSION

For the foregoing reasons, defendant's motion is granted.

                                                                 JAMES B. MORAN
                                                  Senior Judge, U. S. District Court

Aug 8, 2005.